IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| WILMOT A. FRASER, | ) |
|                Plaintiff, | ) |
| | ) No. 2:24-cv-3136-DCN |
| vs. | ) |
| | )         ORDER |
| CITY OF CHARLESTON, | ) |
| WILLIAM S. COGSWELL, JR., | ) |
| *in his official capacity as Mayor of the* | ) |
| *City of Charleston*, CHITO WALKER, | ) |
| *in his official capacity as Chief of the City* | ) |
| *of Charleston Police Department*, | ) |
| | ) |
|                Defendants. | ) |
| _____ | ) |

This matter is before the court on defendants City of Charleston (the "City"), William S. Cogswell ("Mayor Cogswell"), and Chito Walker's ("Chief Walker") (collectively, "defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 6. For the reasons set forth below, the court grants defendants' motion to dismiss.

## I.  BACKGROUND

**A. The City's 2018 Short-Term Rental Ordinance**

On April 10, 2018, the City enacted an ordinance (the "Ordinance") that established updated zoning regulations for the operation of residential short-term rental ("STR") properties.[1] Charleston, S.C., Ordinance No. 2018-043. The Ordinance is based

---

[1] This order cites directly to The City of Charleston Ordinance No. 2018-043. Ordinance No. 2018-043 specifically amends the City's zoning ordinance found at The City of Charleston Code 54-120 et seq. Ordinance No. 2018-043 is reproduced in its entirety at ECF No. 1-1 and can be accessed electronically at

1

on the findings and recommendations of a special task force appointed by the Charleston City Council, specifically tasked with considering the effects of STRs on the local economy, homeownership, and neighborhood character. Id. § 1. The Ordinance defines a STR as, "A conditional use to provide sleeping accommodations for a period of between one (1) and twenty-nine (29) consecutive days." Id. § 2. Operation of a residential STR in violation of the Ordinance is a criminal offense punishable by a fine and/or incarceration. Id. § 9(e)(2).

Lawful operation of a residential STR requires a permit from the City zoning administrator. Id. § 9(c). To obtain a residential STR permit, the operator must submit an application that includes a floor plan of all structures on the property with the proposed residential STR area identified, a site plan of the entire property, and an application fee. Id. All decisions of the zoning administrator are appealable, and residential STR permits are valid for one year. Id. The Ordinance requires all advertisements and marketing materials, including listings on online platforms, to contain the STR permit number. Id. § 9(b).

Pursuant to the Ordinance, the operation of a residential STR must be "an accessory use to the principle residential use" of the property. Id. § 9(a). Further, the operator of a residential STR is required to be "a [r]esident of the subject property" and "be residing overnight on the property" while guests are present. Id. § 9(b)(1). Taken together, the Ordinance requires all residential STRs to be "owner-occupied." See § 9.

---

https://www.charlestonsc.gov/DocumentCenter/View/18216/STR-Ordinance-As-Amended-Approved-2018-043.

### B. Factual History

Since 1995, plaintiff Wilmot A. Fraser ("Fraser") has owned and operated the property located at 119 Maple Street (the "Property") as a residential STR. ECF No. 1, Compl. Id. ¶¶ 53, 56. The Property lies within the city limits of Charleston, South Carolina and is subject to the Ordinance. Id. ¶ 53. Fraser lists the Property for rent on Airbnb.com as "Fraser's Gullah Homestay," using it "as a platform to enlighten and educate guests about Gullah Geechee culture" within the City. Id. ¶ 54. Fraser operates the Property as a STR to supplement his fixed income. Id. ¶ 61. The Property is not Fraser's primary residence. Id. ¶ 57.

On September 8, 2022, Fraser received a letter from the City demanding that he immediately cease all operation and advertisement of the Property as a STR due to noncompliance with the Ordinance. Id. ¶ 60. At that time, Fraser had not obtained a STR permit from the City. See id. ¶¶ 53–71. Fraser immediately stopped offering the Property as a STR, but he was unable to secure a long-term rental booking for approximately three months. Id. ¶¶ 60–61. Fraser resumed offering the Property as a STR to avoid financial detriment. Id. ¶ 62. To date, Fraser has been issued ten Uniform Ordinance Summons from the City's Livability Court and accumulated $10,870.00 in fines for operating and advertising the property as a STR in violation of the Ordinance. Id. ¶ 63.

### C. Procedural History

Fraser filed this action May 22, 2024. ECF No. 1, Compl. Fraser seeks declaratory and injunctive relief on three causes of action under 42 U.S.C. § 1983 for (1) a violation of the Equal Protection Clause of the Fourteenth Amendment, (2) a violation

of substantive due process, and (3) a violation of the First Amendment.  Compl. ¶¶ 72–103.  On June 20, 2024, defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 6.  Fraser responded in opposition on November 25, 2024.  ECF No. 15.  Defendants replied on December 13, 2024.  ECF No. 22.  As such, the motion is fully briefed and is now ripe for the court's review.

## II.  STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").  To be legally sufficient, Rule 8 requires a complaint to contain: (1) "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought, which may include relief in the alternative or different types of relief."  Fed. R. Civ. P. 8(a).  Moreover, under Rule 8(d), "[e]ach allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).

When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff.  Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III.   DISCUSSION

Defendants move to dismiss each of Fraser's causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Fraser has failed to state a claim for relief. ECF No. 6 at 1. The court analyzes each cause of action in turn.

#### A. Equal Protection Claim

Fraser's complaint alleges that the Ordinance violates the Equal Protection Clause of the Fourteenth Amendment because the Ordinance "intentionally discriminates against certain property owners who choose not to live in the property they are offering as a short-term rental." Compl. ¶ 24. Fraser contends that the "owner-occupied" requirement is an irrational distinction, results in differential treatment that is arbitrary and capricious, and has no rational relationship to the City's stated goals in the Ordinance. Id. ¶¶ 22–34. Defendants move to dismiss Fraser's equal protection claim, arguing the distinction regulation of "owner-occupied" and "non-owner occupied" properties in the Ordinance is rational on its face because it remedies the negative effects on neighborhoods and homeownership caused by STRs. ECF No. 6 at 3–5. Defendants further assert that Fraser has failed to provide evidence that he was treated differently from any other similarly situated STR operator. Id. at 5–7.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike."

City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (internal quotation marks and citation omitted). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If this showing is made, the court proceeds to the second step and "determine[s] whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. "The level of scrutiny depends on the type of classification." Sansotta v. Town of Nags Head, 724 F.3d 533, 542 (4th Cir. 2013). When a party has not alleged that it was deprived of a fundamental right or that it was subjected to discrimination based on a suspect classification, a court "will uphold the distinctions drawn by [the defendant] if they were 'rationally related to a legitimate state interest.'" Pulte Home Corp. v. Montgomery Cnty., 909 F.3d 685, 693 (4th Cir. 2018) (quoting Siena Corp. v. Mayor & City Council of Rockville, 873 F.3d 456, 463 (4th Cir. 2017)). To rebut a defendant's rational reasons for treating a plaintiff differently, the plaintiff carries the "heavy burden of negating every conceivable basis which might reasonably support the challenged classification." Van der Linde Hous., Inc. v. Rivanna Solid Waste Auth., 507 F.3d 290, 293 (4th Cir. 2007).

At the outset, the court finds that Fraser has not alleged that he was deprived of a fundamental right or subjected to discrimination based on a suspect classification. See Compl. The parties agree that rational basis is the proper standard of scrutiny for Fraser's equal protection claim. Id.; ECF Nos. 6 at 4, 10 at 6–7. Thus, the court's analysis of Fraser's equal protection claim at step one is to determine whether he has sufficiently

6

pleaded that he was intentionally treated differently under the Ordinance from other STR operators who are similarly situated. See Morrison, 239 F.3d at 654. At step two, the court must determine whether the Ordinance's "owner-occupied" requirement is rationally related to a legitimate interest of the City. See Pulte Home Corp., 909 F.3d at 693; see also Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (finding that for a plaintiff to succeed on an equal protection claim brought by a "class of one," she must "allege[] that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment").

The court need not reach the question at step two of whether there was a rational basis for the Ordinance's "owner-occupied" requirement because Fraser has neither identified any similarly situated "non-owner occupied" STR operator nor alleged that he was intentionally treated differently in regard to the Ordinance's regulations. "Similarly situated" means that those identified "are in all relevant respects alike" to the plaintiff. Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). "When a plaintiff provides no evidence that he was treated differently from others who are similarly situated, their equal protection claim must fail." Lowe v. City of Charleston, 597 F. Supp. 3d 855, 860 (D.S.C. 2022) (quoting Tri Cnty. Paving, Inc. v. Ashe Cnty., 281 F.3d 430, 440 (4th Cir. 2002)).

In Lowe, the plaintiffs brought an equal protection claim against the City of Charleston, challenging the denial of their zoning application. Lowe, 597 F. Supp. 3d at 857–58. The plaintiffs applied to rezone their property from a residential zoning classification to a limited business zoning classification. Id. This court held that the equal protection claim in Lowe failed because the plaintiffs did not present evidence of

7

any similarly situated properties located within the same residential zone that received a different treatment in regard to their zoning application. Id. at 860–61.

Here, like the plaintiffs in Lowe, Fraser has failed to plead allegations of any similar situated individual in his equal protection claim. See id. To identify that a similarly situated STR operator that is "in all relevant respects alike to him," Fraser must demonstrate that there was at least one "non-owner occupied" STR operator who has been subject to fines or penalties from the City for violating the Ordinance. See Nordlinger, 505 U.S. at 10. In his complaint, Fraser references "similarly situated property owners" on multiple occasions. See Compl. ¶¶ 28, 77, 78, 84. Fraser contends that to identify a similarly situated STR operator, the court must focus on the "location of the property within specific regulated zones subject to the City of Charleston's jurisdiction and property ownership." ECF No. 15 at 8. However, Fraser does not himself identify a similarly situated STR operator in his filings. See id.; Compl. Also absent from Fraser's complaint is any allegation of differential treatment with respect to any similarly situated STR operator under the Ordinance. See Compl. Because Fraser's equal protection claim neither identifies others with whom he is similarly situated nor demonstrates that he was subject to intentional, different treatment under the Ordinance, he has failed to state a claim for relief. See Morrison, 239 F.3d at 654; Tri Cnty. Paving, 281 F.3d at 440.

Even if the court were to proceed to step two after finding that Fraser was intentionally treated in a different from similarly situated STR operators under the Ordinance—which the court does not—Fraser fails to negate any rational or conceivable basis offered by defendants to support the Ordinance's "owner-occupied" requirement.

8

Defendants contend that there are multiple, legitimate bases for the Ordinance's permit and "owner-occupied" requirements and that those bases are rationally related to the City's legitimate interests. ECF No. 6 at 4–5. Defendants state that the "owner-occupied" requirement allows for STR operators to "observe, regulate, address, and receive complaints about any disruptive behavior by short-term renters." Id. at 4. Defendants also point that the "owner-occupied" requirement allows STR operators to best protect the health, safety, peace, and well-being of their immediate neighbors. Id.

In opposition, Fraser argues that the "owner-occupied" requirement is attenuated from the City's stated goals. Id. at 10–11. He asserts that the Ordinance neglects to consider both the technological and economic realities that allow a STR operator to be "available" even if not presently residing on the property. Id. at 12–13. Importantly, Fraser provides no binding legal authority to support his position. See id. at 10–13.

Fraser's arguments do not overcome the heavy burden of negating the City's bases supporting the Ordinance's "owner-occupied" requirement. See Van der Linde, 507 F.3d at 293. As this court has observed, it is reasonable that the City would be concerned with the impact of STRs on neighborhood character, safety, and homeownership, and to use a zoning regulation to achieve its interests. See Lowe, 597 F. Supp. 3d at 862 ("It is reasonable that the [City of Charleston] would be concerned with the use of commercial short-term rental properties compared to the use of residential properties for such purposes."). Even if the court were unconvinced by defendants' reasons, it is not the court's province to second-guess the reasons for the Ordinance requirements so long as they are rational. As the Fourth Circuit has explained, "[i]t is emphatically not the function of the judiciary to sit as a 'super-legislature to judge the

wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.'" Van Der Linde, 507 F.3d at 293 (quoting Van Smith Setzer & Sons, Inc. v. S.C. Procurement Rev. Panel, 20 F.3d 1311, 1323 (4th Cir. 1994)). A governmental body's policy decisions are "not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data," and as such, a policy's rationality may not be "judged on the basis of its wisdom, fairness, or logic (or lack thereof)." Id. (quoting F.C.C. v. Beach Comms., Inc., 508 U.S. 307, 315 (1993)). "[J]udicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." Vance v. Bradley, 440 U.S. 93, 97 (1979).

As such, the court grants defendants' motion to dismiss Fraser's equal protection claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### B. Substantive Due Process Claim

To successfully assert a claim under a substantive due process theory, Fraser must plead facts showing: "(1) that [he] had a property or a property interest; (2) that the [City] deprived [him] of this property or property interest; and (3) that the [City's] action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 827 (4th Cir. 1995). "This is a high bar, and [the City's] action is illegitimate 'only if the alleged purpose behind the [City's] action has no conceivable rational relationship to the exercise of the state's traditional police power through zoning.'" Quinn v. Bd. of Cnty. Comm'rs, 862 F.3d 433, 443 (4th Cir. 2017) (quoting Sylvia Dev. Corp., 48 F.3d at 827).

Fraser's complaint alleges that the Ordinance violates his substantive due process rights by impairing his ability to rent the Property as a STR to guests, thus depriving him of his interest in the Property. Compl. ¶¶ 81–91. He argues that the Ordinance arbitrarily and capriciously undermines his property right to include others. ECF No. 15 at 14. Defendants move to dismiss Fraser's substantive due process claim, arguing that he cannot establish the third element. ECF No. 6 at 7–9. Specifically, defendants assert that "the City's enactment and enforcement of the STR Ordinance was in furtherance of the public welfare." Id.

The court finds that, beyond conclusory assertions, Fraser's complaint lacks sufficient allegations regarding the third element of his substantive due process claim. See Compl. Though Fraser has pleaded that he was deprived of a property interest, he has failed to demonstrate how the Ordinance's "owner-occupied" requirement is the product of the illegitimate government action by the City. See Sylvia Dev. Corp., 48 F.3d at 827. Likewise, Fraser has not sufficiently alleged that the City's purpose behind the Ordinance had "no conceivable rational relationship" to the City's police powers. See id. Consequently, Fraser has not overcome the "high bar" required to successfully plead a substantive due process claim. See Quinn, 862 F.3d at 443.

As such, the court grants defendants' motion to dismiss Fraser's substantive due process claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### C. First Amendment Claim

Fraser's complaint alleges that the Ordinance violates the First Amendment by unconstitutionally mandating that STR operators include the STR permit number in all advertising and marketing materials. Compl. ¶¶ 92–103. Defendants move to dismiss

Fraser's First Amendment claim, arguing that the Ordinance is a lawful regulation of commercial speech. ECF No. 6 at 9–11.

Commercial speech is any "expression related solely to the economic interests of the speaker and its audience." Cent. Hudson Gas & Electric v. Public Serv. Comm., 447 U.S. 557, 561–62 (1980) ("Commercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information."). "The First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation." Id. (citing Va. Pharmacy Bd. v. Va. Citizens Consumer Council, 425 U.S. 748, 761–62 (1976)). In Central Hudson, the Supreme Court recognized that that the First Amendment "accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." Id. at 563. Because commercial speech holds a "subordinate position in the scale of First Amendment values," it may be subjected to "modes of regulation that might be impermissible in the realm of noncommercial expression." Bd. of Trs. of State Univ. of N.Y. v. Fox, 492 U.S. 469, 477 (1989). Courts within the Fourth Circuit review laws that regulate commercial speech under the four-part intermediate scrutiny test articulated in Central Hudson:

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

Recht v. Morrisey, 32 F.4th 398, 408 (4th Cir. 2022) (quoting Cent. Hudson, 447 U.S. at 566)).

In their motion, defendants argue that mandatory inclusion of STR permit information in advertising and marketing materials is not protected commercial speech under the First Amendment because the Ordinance targets misleading advertisement of STRs. ECF No. 15 at 10. Defendants assert that compliance with the Ordinance "give[s] prospective renters the impression that property owners are in compliance with local rules and regulations regarding permitting and occupancy." Id. Further, defendants contend that Ordinance requirements are substantially related to the City's interest in neighborhood safety and stability, the general welfare, and historic preservation. Id. Fraser argues that the Ordinance's permit advertising requirement "introduces a bias against properties owned by individual proprietors as opposed to corporate entities" and is "not reliable indicator of compliance with local regulations." ECF No. 15 at 16.

The court finds that the Ordinance's requirement that STR permit information be included in all advertising and marketing materials is not protected commercial speech within the First Amendment. See Cent. Hudson, 447 U.S. at 566. It is well established that "[i]f advertising is misleading, 'it may be prohibited entirely.'" Recht, 32 F.4th at 411 (quoting In re R. M. J., 455 U.S. 191, 203 (1982)). The Supreme Court's commercial speech cases "make clear that the [government] may ban commercial expression that is fraudulent or deceptive without further justification." Edenfield v. Fane, 507 U.S. 761, 768 (1993). Thus, the court's inquiry is "whether the regulated speech is inherently misleading or whether there is evidence that it is actually misleading." Recht, 32 F.4th at 410 (citing W. Va. Ass'n of Club Owners & Fraternal Servs. v. Musgrave, 553 F.3d 292, 302 (4th Cir. 2009)).

Fraser's First Amendment claim fails because the Ordinance regulates misleading speech. See Cent. Hudson, 447 U.S. at 566. First, it is actually misleading for a STR operator to falsely represent to prospective guests that their property is compliance with the law. See id. Fraser concedes that he engaged the very kind of misleading speech regulated by the Ordinance when he re-listed the Property for short-term bookings with knowledge of his noncompliant advertising and failure to obtain a STR permit. Compl. ¶ 60. Second, the Fourth Circuit stated in Recht that"[s]uggesting affiliation with the sponsorship of a government agency where none exists is inherently deceptive." Recht, 32 F.4th at 411. Like in Recht, the Ordinance abates inherently deceptive advertising and marketing that suggest that the City has authorized the property to operate as a STR. See id. Because the Ordinance regulates actually and inherently misleading speech, it is not a violation of the First Amendment for the City to require STR operators, like Fraser, to include the STR permit information in advertising and marketing materials for lawful STR operation. See Edenfield, 507 U.S. at 768.

As such, the court grants defendants' motion to dismiss Fraser's First Amendment claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## IV.   CONCLUSION

For the foregoing reasons the court **GRANTS** defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

**AND IT IS SO ORDERED.**



**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 4, 2025**
**Charleston, South Carolina**